Johnson, Justice.
(Dissenting.) — I have no hesitation in conceding that if all the objects had failed, for which the power in this will was created, the power itself ceased, both at law and in equity. Those objects were, 1. The raising of the legacy of 400?. for Young: 2. The sale and distribution of the testator’s estate among his own relatives. If neither of these objects remained to be effected, the power under which the plaintiff makes title, was at an end.
The words on which the legacy depends are these, “ but in case of the decease of my said son, without issue, as aforesaid, in the lifetime of the said Archibald Young, then the said annuity is to *cease; and in lieu thereof, I give and bequeath unto the said A. Young, and his assigns, the sum of 400?. sterling, payable out of the proceeds of my real estate, when the same is sold and disposed of, according to the intention of this my will herein after mentioned, and before any dividend is made of my said estate.” The question which this clause presents is, whether the legacy was given upon the single contingency of the son’s death without issue, or upon the double contingency of his death without issue, in the lifetime of A. Young.
This question appears to me to be settled by the testator himself ; for in a subsequent part the will, speaking of this same legacy, and of course with reference to the clause bequeating it, he says, “ the sum of 400?. sterling, herein before given and bequeathed to the said A. Young, immediately on the decease of my said son without issue.” The testator, then, has attached this construction to his own words ; and that the clause containing this bequest will well admit of that construction, is obvious ; for there is no necessity for joining the first member of the sentence, which contains the double contingency, to the last member, which contains the bequest. And the effect of the will, without this connection (which I cannot but think forced and unnecessary), will be, to give the pecuniary legacy absolutely, on the event of the son’s death without issue, but at the same time to declare, that the annuity should no longer run on, whenever this bequest took effect. This would literally be giving it in lieu of the annuity, and would fully satisfy those words in the will. Indeed, this construction appears irresistible, when we consider another part of the will. The power to sell is extended to the executors and administrators of A. Young. They, therefore, were authorized to sell, in the event of the death of the son without issue, although he should survive A. Young. Yet we find the testator, when obviously contemplating the event of the son’s surviving Young, expressly directing the payment of this legacy, before the proceeds should be distributed *238 among the devisees over. This could only be consistent with a bequest, upon the single contingency of the son’s death without issue, independently of Young’s survivorship.
Nor is there the least ground for contending, that this bequest is upon a contingency too remote, since the sale and devise over are expressly limited to take effect upon the death of the son, thereby restricting the generality of the words issue and heirs, so as to mean issue living at his death This, too, is consistent with those acknowledgments of the testator of a debt of gratitude to A. Young, and not only of a debt to accrue, but of a subsisting debt. The annuity is given in prcesenti: and so is is its substitute, the legacy. The words are, “ I give and bequeath,’.’ thus vesting a present interest, although the payment is deferred to a future time and event. The views of the testator are easily explained : if his son or his issue took the estate, his bounty to Young was to be limited to the annuity. But if it should go over to his collateral *kindred, the testator enlarges his bounty, and gives this substitute for the annuity, at the same time that he frees his estate from a charge that would embarrass the sale.
Nor can I possibly admit the doctrine, that the power to sell was, either at law or in equity, limited to the duration of two years after the death of the son without issue. The words are, “ then I direct and order my said cousin, A. Young, his executors and administrators, to sell and dispose of my real estate, within two years after the decease of my said son.” Here, the words are clearly imperative, and their effect is, both to confer the power generally, and to exact the execution of it in two years. The intention of the testator must prevail, both at law and in equity, in construing his words ; and when they will admit of a construction which will make the power commensurate with the views of the testator in creating it, I hold that to be the true construction, both in law and equity. It is only when the power given admits not of this latitude by construction, that the aid of courts of equity is resorted to, in order to carry into effect the views of the testator. By possibility, the executors of A. Young may have been minors, as may not have proved his will, until the two years had expired, or a sale during that time may have been stayed by injunction, or by the want of purchasers ; and it would be difficult to show why, in any one of these events, the power should have ceased. Certainly, no reason can be extracted from the provisions of the will, whence an intention could be inferred, to restrict the Power to se^ to *period of two years. Everything favors the contrary conclusion. For whose benefit was this injunction to sell, within the specified period, imposed upon the executor ? Clearly, for that of the brothers and sisters, in order that, under it, they may have compelled the executor to proceed to sale, within the time limited. It would be strange, then, if a provision so clearly intended for their interests, should have put it in the power of the executor, either wilfully, or by laehes, to defeat their interests, and let in the heir-at-law.
This is not the case of a mere naked power — it is a power coupled with a trust. The executor was to sell, that he might possess himself of the value in money, and distribute it among the cestuis que trust. In such cases, it has been well observed, that “the substantial part is to do the thing,” and that “ powers of this kind have a favorable construction in law, and are not resembled to conditions, which are strictly expounded.” I am, therefore, of *239 opinion, that the words creating this power will well admit of being construed into a general devise of the power, and that the object intended to be answered, necessarily requires that construction.
The dictum, cited from the Tear Books, therefore (besides that it has not been very correctly translated), has no application to this case ; since it supposes the actual restriction under the will, which I deny to be imposed, in the present instance, upon the true construction of its words.
Being, therefore, of opinion, that both the legacy to Young, and the power to sell, subsisted *at the date of the sale to the plaintiff, these views of the case are sufficient to sustain the sale to the plaintiff ; and the subsequent questions would arise, only upon the distribution of the remainder of the purchase-money, after satisfying the legacy. Nevertheless, I will make a few remarks upon that part of the will which relates to the devise over to the testator’s family, since it serves to elucidate, by another application, the principle upon which I have formed my opinion respecting the legacy to A. Young.
On the subject of the devise over to his brothers and sisters, the testator has again been his own expositor. It is veiy clear, that if the words, “ or such of them as shall be living at the decease of my said son,” stood alone and unexplained, the relative them might be applied grammatically, with more propriety, to the word “heirs,” than to the words “brothers and sisters;” and thus, perhaps, give those words the effect of words of purchase. But the testator himself gives these words a distinct application, in the latter part of his will, when disposing of his personal estate ; concerning which he says, that it shall be “ divided among my brothers and sisters, with the proceeds of my real estate, as hereinbefore directed to be divided.” Under the words here used by the testator, it is clear, that the brothers and sisters only could take, and not the brothers’ and sisters’ children, thus restricting the word “ heir ” to its natural and appropriate signification ; from which, it can be converted into a word of purchase, only by the clear and controlling intent of the testator. This ^construction is further supported, by those words which require a distribution of the proceeds of the real estate equally, share and share alike, to the legatees; a distribution which could not take place per stirpes, or in the event of one or more brothers surviving, and the death of the rest, leaving issue, living at the death of the son. On this point, therefore, I concur with the supreme court of Pennsylvania; and only regret that I cannot concur both with that court and this, on the other bequest.
Upon the question so solemnly pressed upon this court in the argument, how far the decision of the court of Pennsylvania ought to have been considered as obligatory on this court, I would be understood as entertaining the following views : As precedents entitled to high respect, the decisions of the state courts will always be considered ; and in all cases of local law, we acknowledge an established and uniform course of decisions of the state courts, in the respective states, as the law of this court; that is to say, that such decisions will be as obligatory upon this court as they would be acknowledged to be in their own courts. But a single decision on the construction of a will, cannot be acknowledged as binding efficacy, however it may be respected as a precedent. In the present instance, I feel myself *240 sustained in my opinion upon tbe legacy to A. Young, by the opinion of one of the three learned judges who composed the state court.
Judgment affirmed.